UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| APRIL TELENA MILLER<br>and ROGER MILLER | )<br>)<br>) | |
| Plaintiffs | ) | CASE NO. 4:11-CV-26 |
| v. | ) | *Mattice/Carter* |
| | ) | |
| NORTHLAND INSURANCE COMPANY, INC.,<br>REFA WATLEY d/b/a REFA WATLEY<br>TRUCKING, and LEWIS LEO WATLEY | )<br>)<br>)<br>) | |
| Defendants. | ) | |

REPORT and RECOMMENDATION

I. Introduction

April Telena Miller was injured in a single vehicle accident while riding in a truck driven by Lewis Watley. Northland Insurance Company, Inc. (Northland), the insurance carrier for Lewis Watley's employer, Refa Watley d/b/a/ Refa Watley Trucking, declined coverage for April Miller's injuries, and April Miller and her husband now bring this action against Northland and the Watleys for a declaration that her injuries are covered under Northland's policy. Northland moves to realign Refa Watley and Lewis Watley as plaintiffs with the Millers. Plaintiffs argue that this Court lacks subject matter jurisdiction because the instant action is a "direct action" under 28 U.S.C. § 1332(c)(1) thereby destroying diversity jurisdiction and that realignment is improper under the principal purpose test. The undersigned concludes this action is not a "direct action under Section 1332(c)(1) and, applying the principal purpose test, the undersigned concludes the Millers and the Watleys share a common interest: having April Miller's injuries

1

covered by the Northland insurance policy issued to Refa Watley. Therefore, it is
RECOMMENDED that Northland's motion to realign parties be GRANTED.[1]

## II. Relevant Facts

Refa Watley owns a trucking company named Refa Watley Trucking. Her husband, Lewis Watley, was driving a truck while in the employment of Refa Watley Trucking on or about December 4, 2007 in New York state when he had an accident. April Telena Miller who was a passenger in the truck was injured.

At the time of the accident, Refa Watley had an insurance policy with Northland insuring against injury to third parties, including non-employee independent contractors, resulting from the operation of her trucking business. The policy contains an exclusion provision (the employee exclusion provision) stating the insurance policy does not apply to any injury incurred by an employee arising out of the employee's employment with the insured. (*See* Northland's March 6, 2008 letter to Refa Watley, Doc. 1-1, Page ID # 67-68). Refa Watley made a claim under the Northland policy for coverage of April Miller's injuries sustained on December 4, 2007, but Northland denied the claim on the ground that "Ms. Miller is a driver for your business," and coverage was excluded under the employee exclusion provision. *Id.*

April Miller brought an action in a New York state court arising from the December 4, 2007 accident alleging negligence, *inter alia*, against Lewis Watley and asserting Refa Watley is

---

[1]The undersigned has prepared this decision as a report and recommendation rather than as an order because the outcome of the motion will affect the jurisdiction of the Court making the motion dispositive in nature. *See United States Fidelity and Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1088 (6th Cir.1992) (holding that motion to realign the parties, which "would automatically either destroy or preserve diversity jurisdiction," was "in effect a dispositive ruling.")

2

vicariously liable for Lewis Watley's negligence. Subsequently, April and Roger Miller filed this action in the Circuit Court of Warren County, Tennessee on November 30, 2010 naming Northland, Refa Watley d/b/a/ Refa Watley Trucking, and Lewis Leo Watley as defendants. Northland removed the action to this Court on April 29, 2011. Plaintiffs submit the sole reason they sued the Watleys in this declaratory judgment action was because Tennessee law requires them to be named given their status as potential stakeholders in the outcome. *See* Tenn. Code Ann. § 29-14-107(a).[2]

In the present action, the Millers seek a declaration pursuant to the Tennessee Declaratory Judgment Act, Tenn. Code Ann. § 29-14-101 *et seq.*, that April Miller is covered under the Northland insurance policy issued to Refa Watley and/or that Northland has a duty to defend and indemnify Refa Watley for all liability to the Millers incurred as a result of the December 4, 2007 accident. The Millers allege in their complaint that they and the Watleys are citizens of Tennessee. Northland asserts in its notice of removal that it was incorporated in Connecticut with its principal place of business in Hartford, Connecticut.

When Northland removed this action to this Court, it simultaneously filed this motion for realignment of the parties. As Northland acknowledges, unless the Watleys are realigned as plaintiffs with the Millers, diversity jurisdiction does not exist since, without realignment, diversity of citizenship is lacking.

---

[2]Tenn. Code Ann. § 29-14-107(a) provides, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings."

3

III. Discussion

A. 28 U.S.C. § 1332(c)(1)

First, plaintiffs argue "the court is statutorily precluded from exercising diversity jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(c)(1)." (Plaintiff's Response, Doc. 9, Page ID # 202). While the undersigned does not intend to address the issue of subject matter jurisdiction in general as this is a matter for the district court when considering the plaintiffs' motion to remand, to the extent that this argument is relevant to the instant motion to realign the parties, the undersigned will consider it.

28 U.S.C. § 1332(c)(1) provides in relevant part:

(c) For the purposes of this section and section 1441 of this title–

(1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, *except that in any direct action against the insurer of a policy or contract of liability insurance, ... to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen ....*

(Emphasis added).

Plaintiffs contend this declaratory judgment action is a "direct action" against Northland and, accordingly, if the Watleys are realigned as plaintiffs in this case, then Northland must be deemed a citizen of the same state as its insured, Refa Watley. Then all parties, the Millers, the Watleys and Northland would be citizens of Tennessee. Consequently, the argument continues, realignment is pointless since there could be no diversity jurisdiction even if the Watleys are realigned as plaintiffs.

Northland counters this claim for a declaratory judgment is not a "direct action" for purposes of Section 1332(c)(1), and thus Northland and the Watleys do not share the same state

4

for purposes of their citizenship. In support of its position, Northland cites to *Estate of Monahan v. Am. States Ins. Co.*, 75 Fed. Appx. 340, 343 (6th Cir. 2003) and a line of cases which hold, asserts Northland, that a "direct action" in Section 1332(c)(1) contemplates a *tort* action brought by a third party against an insurer in lieu of bringing a tort action against the insured, the alleged tortfeasor.

In *Estate of Monahan*, the estate of Jason Monahan, who was killed in a car accident, brought an action against two insurance companies seeking a declaration that Jason had underinsured/uninsured motorist (UM/UIM) coverage under the two insurance policis the insurance companies had issued to Jason's employer. The basis of federal subject matter jurisdiction was diversity of citizenship. Since the estate and Jason's employer were citizens of the same state, imputing the employer's citizenship to the insurance companies would destroy diversity jurisdiction. The insurance companies argued Section 1332(c)(1) applied and diversity jurisdiction was therefore destroyed. The Sixth Circuit rejected this argument, however, reasoning:

> Section 1332(c)(1) refers to situations where the plaintiff is suing the tortfeasor's insurer, *rather than suing the tortfeasor directly, <u>on the issue of liability.</u>* This makes logical sense, as § 1332(c)(1) evidently was enacted to prevent a plaintiff from end-running the diversity of citizenship requirement (where the tortfeasor hails from plaintiff's state, but the tortfeasor's insurer does not) by suing the tortfeasor's insurer instead of the tortfeasor. *See Peterson v. TIG Specialty Ins. Co.*, 211 F.Supp.2d 1013, 1015 (S.D.Ohio 2002) ("[T]his direct action exception that destroys diversity exists only where a third-party tort victim forgoes suing the tortfeasor in favor of instead suing the tortfeasor's liability insurer directly. This is the universal rule.") (citing cases from the First, Third, and Eleventh Circuits).

*Estate of Monahan,* 75 Fed. Appx. at 343, (emphasis added). The Sixth Circuit also focused closely on the fact that the estate was "step[ping] into the shoes" of the insured, Jason's

5

employer, in bringing the declaratory judgment action which resulted, in effect, in the insured suing its own insurance carrier "for UM/UIM coverage, not liability." *Id.* In such a situation where the insured is suing its own insurer, "[t]he insured obviously is not joined as a party-defendant because the insured is the plaintiff. Applying the direct action provision to a dispute solely between an insured and her own insurance company would result in an absurdity-federal courts would never hear common insurance disputes because the insured and the insurer, the plaintiff and the defendant, would always be considered citizens of the same state." *Id.* (quoting *Lee-Lipstreu v. Chubb Grp. of Ins. Cos.*, 329 F.3d 898, 899-900 (6th Cir.2003). Thus, the court concluded the Estate's action against the insurance companies did not constitute a "direct action" for purposes of Section 1332(c)(1). *Estate of Monahan*, 75 Fed. Appx. at 344.

The decision in the *Estate of Monahan* rests on two bases. First, the plaintiff was not suing the insurers to determine the underlying liability of the tortfeasor in the accident that killed Jason. The estate was suing for a declaration of coverage by the insurers should the tortfeasor be determined to be liable to the estate. Second, the estate, who was the plaintiff, was stepping into the shoes of the insured and could *not* be joined as a party defendant. There are numerous district court cases within the Sixth Circuit that follow this same line of reasoning to determine that Section 1332(c)(1) does not apply to impute the insured's citizenship to the insurer. *See e.g., Peterson v. TIG Specialty Ins. Co.*, 211 F. Supp.2d 1013, 1015 (S.D.Ohio 2002) ; *Bauer v. Wausau Business Ins. Cos*. 2002 WL 31409863 *2 (S. D. Ohio Sept. 5, 2002); *Badgett v. Zurich North America*, 2009 WL 289827, *1 (N.D. Ohio Feb 05, 2009); *Lawrence v. State Farm Fire and Cas. Co., Inc.*, 2007 WL 527942, *2 (W.D. Tenn. Feb 14, 2007).

6

None of the decisions just cited are binding authority; they are, however, extremely persuasive in light of the reason why Congress enacted Section 1332(c)(1):

> 28 U.S.C. § 1332 Subsection (c)(1) was added in 1964 after the Louisiana federal courts experienced a significant caseload increase resulting from the state adopting a direct action statute. S.Rep. No. 88-1308, at 1 (1964), reprinted in 1964 U.S.C.C.A.N. 2778, 2778-79; *see Northbrook Nat'l Ins. Co. v. Brewer*, 493 U.S. 6, 9, 110 S.Ct. 297, 107 L.Ed.2d 223 (1989). The Louisiana statute permitted Louisiana residents to file tort claims directly against nonresident insurers without joining the Louisiana resident who allegedly committed the tort. *See Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1188 (5th Cir.1988). The 1964 amendment to the federal direct action statute made clear that the statute's purpose was not to be used as a vehicle to hail an insurer into federal court where both the plaintiff and the insured are residents of the same state. *Newsom v. Zurich Ins. Co* ., 396 F.2d 280, 281 (5th Cir.1968).

*Dunleavy v. State Farm Fire and Cas. Co.*, __F.3d __, 2011 WL 317727 *2 (E. D. Mich Feb. 1, 2011), *see also, Bowers v. Cont'l Ins. Co.*, 753 F.2d 1574, 1576-77 (11th Cir. 1985); *Kimball Small Properties v. American Nat'l Fire Ins. Co.*, 755 F. Supp. 1465, 67 (N.D. Ca. 1991).

The case of *Reed v. Indiana Ins. Co.*, 2010 WL 6778868 (E.D. Mich. Dec. 23, 2007) is directly on point. The *Reed* plaintiffs filed an action in state court against a cemetery operator who had allegedly misplaced the plaintiffs' mother's remains. Upon receipt of the complaint in this matter, the cemetery operator submitted a claim to its insurer who denied the claim. Plaintiffs then filed a separate declaratory judgement action in state court for the purpose of determining whether the insurer owed coverage. The insurer removed the declaratory judgment case to federal court on the basis of federal diversity jurisdiction leaving the other case on the issue of the cemetery operator's liability in state court. The plaintiffs moved to remand the declaratory judgment action back to state court on the ground that the action was a "direct action" for purposes of Section 1332(c)(1) and thus the cemetery operator's citizenship must be imputed

7

to the insurance company. Since the citizenship of the plaintiffs and the cemetery operator were the same, diversity jurisdiction would be destroyed. The *Reed* court denied the motion to remand on two grounds: 1) the plaintiffs were not bringing a tort action against the insurance company to establish that the cemetery operator had acted negligently; plaintiffs were only bringing an action to determine coverage in the event the cemetery operator was found liable to the plaintiffs in the pending state court case, and 2) the declaratory judgment action was "akin to an action by an insured against an insurer" since the plaintiffs had stepped into the shoes of the cemetery operator by filing their action against the cemetery operator's insurer seeking a declaratory judgment as to coverage. *Id.* at *3.

Similarly, the Millers have not brought this action to establish that Lewis Watley's negligence caused April Miller's injuries and that Refa Watley is vicariously liable to her. They have filed an action in a New York state court for that purpose. Rather, the Millers bring this action on the sole issue as to whether, if a judgment is rendered against the Watleys in the New York state action, April Miller will be covered under the Northland policy. By doing so, the Millers have figuratively stepped into the shoes of Refa Watley to determine coverage under her insurer, Northland. Accordingly, the undersigned concludes this declaratory judgment action is not a "direct action" within the meaning of Section 1332(c)(1) and realignment of the parties as requested by Northland would not destroy diversity jurisdiction.[3]

---

[3]The Court understands that the insurance policy at issue is not a "no fault" policy which would not require a later adjudication of the issues of fault on the part of Lewis Watley and liability on the part of Refa Wately before Northland could be required to pay for April Miller's injuries under the proceeds of the policy. If this were such a "no fault" policy, then the outcome of this motion would be different. If Northland's policy with Refa Watley was a "no fault" policy, a finding that April Miller was covered under the policy would be tantamount to a direct action against Lewis and Refa Watley. *See Ford Motor Co. v. Ins. Co. of N. Am.*, 669 F.2d 421,

8

B. The Primary Purpose Test

Second, plaintiffs contend the parties are already appropriately realigned, and therefore Northland's motion should be denied. It is the responsibility of the courts, not the parties, to align the parties according to their interests in a lawsuit. *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559 (6th Cir. 2010); *United States Fidelity and Guaranty Co, v. Thomas Solvent, Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992). In order to align the parties according to their interests in a case, the Sixth Circuit uses the principal purpose test derived from the Supreme Court's decision in *Indianapolis Gas v. Chase National Bank*, 314 U.S. 63 (1941). *Id.*

> In *Indianapolis Gas*, the Supreme Court established a general test for determining the appropriate alignment of parties in an action where federal jurisdiction is based on diversity. The Court stated that "whether the necessary 'collision of interests' ... exists, is [ ] not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit,' ... and the 'primary and controlling matter in dispute.' " *Id.* (citations omitted).

*Thomas Solvent*, 955 F.2d at 1089 (brackets and ellipses are original).

Plaintiffs argue they cannot be aligned with the Watleys because they have sued the Watleys in a New York state court, and thus the Millers' and the Watleys' interests are clearly opposed to one another. However, as stated by the Sixth Circuit in *Thomas Solvent*, 955 F.2d at 1089,

> ... *Indianapolis Gas*, requires that parties be aligned in accordance with the primary dispute in the controversy, even where a different legitimate dispute

---

425 (6th Cir. 1982); *Bauer v. Wausau Business Ins. Cos.*, 2002 WL 31409863 *2 (S.D. Ohio Sept. 5, 2002) ("'The no fault insurer ...stands in the place of the tortfeasor in a manner strikingly similar to that originally envisioned by Congress in addressing the direct action problem ...'") (quoting *Redmon v. Sumitomo Marine Mgmt. (USA) Inc.*, 179 F. Supp2d 787 (N.D. Ohio 2001).

9

> between the parties supports the original alignment. Thus, despite the fact that there may be actual and substantial ancillary or secondary issues to the primary issue, the parties should be aligned in accordance with the primary issue in an action.

(Internal citations omitted). Certainly the Millers and the Watleys have different interests in the New York state case. But in *this* case, the primary dispute is whether Refa Watley's insurance policy with Northland covers April Miller's injuries in the event Lewis and Refa Watley are found liable in the New York state action. It is in the best interests of April and Roger Miller *and* Refa and Lewis Watley that Northland would cover April Miller's injuries sustained in the accident. Otherwise, Lewis Watley, who could be held personally liable for April Miller's injuries, and Refa Watley, who could be held vicariously liable for April Miller's injuries, would have no insurance to cover the damages. The Watleys' and the Millers' controversy in the New York state case is ancillary to the primary issue in *this* case.

IV. Conclusion

Accordingly, the undersigned concludes realignment is proper, and it is

RECOMMENDED that Northland's motion for realignment be GRANTED, and Refa and Lewis Watley be REALIGNED in this action as plaintiffs with the Millers.[4] [5]

                                              *s/William B. Mitchell Carter*
                                              UNITED STATES MAGISTRATE JUDGE

---

[4] The Millers invite the undersigned to abandon the doctrine of realignment suggesting that the doctrine of realignment is outdated and creates more problems than it solves. In support of this position, the Millers cite to a law review note entitled, "*A Call for the End of the Doctrine of Realignment*," by Jacob S. Sherkow, 107 Mich. L. Rev. 525 (2008). The undersigned must decline this invitation as I am bound by Supreme Court and Sixth Circuit precedent.

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(a). Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).